IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

PAMELA SHILLINGFORD               :        CIVIL ACTION
                                  :
          v.                      :
                                  :
HESS OIL OF THE VIRGIN ISLANDS    :
(HOVIC), et al.                   :        NO. 98-232


MEMORANDUM

Bartle, C.J.                                      June 18, 2009

          Plaintiff Pamela Shillingford brings this race and sex

discrimination in employment action against Hess Oil Virgin

Islands Corporation ("HOVIC"),[1] Amerada Hess Corporation

("Hess"),[2] Southerland Tours, Inc. ("Southerland Tours"), and

American Express Travel Related Services Company, Inc. ("American

Express")[3] under Title VII of the Civil Rights Act of 1964 as

_____

1.  As of October, 1998, HOVIC became known as HOVENSA.  However,
because this lawsuit was filed prior to the name change the
caption, and our Memorandum and Order, retain the original
corporate name.  HOVIC was a Virgin Islands wholly-owned
subsidiary of Amerada Hess Corporation.

2.  After May 8, 2006, Amerada Hess Corporation became known as
the Hess Corporation.  As with HOVIC, we retain here the company
name as of the filing of this lawsuit.

3.  On September 15, 1999 the court granted the motion of
American Express to dismiss the claims against it on the ground
that Shillingford had not sufficiently alleged that American
Express was her employer.  The claims were dismissed without
prejudice.  On August 11, 2003 the court denied Shillingford's
motion for reconsideration and also denied her request to amend
her Amended Complaint.  On April 19, 2007, Southerland Tours
settled its crossclaims against American Express and the two
companies jointly requested an order dismissing the crossclaims
with prejudice.  The order was granted.  On December 10, 2007,
                                              (continued...)

amended, 42 U.S.C. §§ 1981, 1985, 1986, and 2000e <u>et seq</u>.  She also brings a federal law claim for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 <u>et seq.</u>, and territorial law claims for intentional infliction of emotional distress, breach of contract, violations of the Virgin Islands workers' compensation laws, V.I. Code. Ann. tit. 24, §§ 250 <u>et seq.</u>, "agency," and fraud and misrepresentation.  Now before the court is the motion of defendants HOVIC and Hess for summary judgment on all claims brought against them.

We have jurisdiction pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 1612.  Under § 1612(a) the District Court of the Virgin Islands "shall have general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands."  48 U.S.C. § 1612(b); <u>see</u> <u>Edwards v. HOVENSA, LLC</u>, 497 F.3d 355, 358-59 (3d Cir. 2007).  The Virgin Islands Legislature has not divested this court of authority over the ordinary contract and tort claims at issue here.

I.

Unless stated otherwise, the following facts are either undisputed or viewed in the light most favorable to the plaintiff.  <u>See</u> <u>In re Flat Glass Antitrust Litig.</u>, 385 F.3d 350, 357 (3d Cir. 2004).  Plaintiff Pamela Shillingford is a black woman, born in Dominica, and a resident of St. Croix, Virgin

---

3.  (...continued)
American Express was terminated from this action.

Islands.  In late 1989, HOVIC recruited and hired her to work on-site at the HOVIC oil refinery in St. Croix coordinating travel for HOVIC and Hess personnel.[4]  Shillingford Aff. at 1.  In that role she arranged flights, lodging, and ground transportation for employees of HOVIC and for Hess and HOVIC contractors coming to and from St. Croix on business.  Id. at 3.  As part of her job, Shillingford also made personal travel arrangements for HOVIC employees and their family members.  Id.  She was authorized to initial housing leases on behalf of HOVIC, and she was on-call to HOVIC 24 hours a day to authorize plant entry badges for visitors.  Id. at 4.

When Chester Guidry, HOVIC's manager of human resources, interviewed and hired Shillingford as the manager of HOVIC's travel office, he told her that she would receive the benefits, privileges, and wages of a HOVIC manager.  Id. at 1.  Based on that promise, she left her position with American Airlines and accepted the position at HOVIC.  Id. at 2.  After her employment began, Shillingford maintains that Guidry reiterated the promise that she would receive full HOVIC benefits, managerial privileges, and certain allowances, as well as compensation comparable to that of travel managers in the Woodbridge, New Jersey office of Hess.  Id.  Nevertheless, those promises, for the most part, remained unrealized in the nine

---

4.  The parties dispute who in fact was Shillingford's employer. By using the phrase "at HOVIC" we do not mean to suggest or prejudge that Shillingford was a HOVIC employee.  We simply intend to convey the fact that she was physically stationed at the refinery.

years Shillingford worked at HOVIC.  Guidry, however, did arrange to permit her and her family to obtain water from the refinery and to allow her to use the HOVIC bus to transport her children to the recreation center after school.  Id. at 3.

It is undisputed that on July 31, 1997, Shillingford fell while at the Henry E. Rholsen Airport in St. Croix where she was obtaining security passes for HOVIC and Hess employees arriving on a corporate jet.  As a result of her injuries she was unable to work for several months.  When she attempted to return to HOVIC in May, 1998, Don Gay, Guidry's successor, ordered her removed from the premises and told her that if she wanted to work at HOVIC she would have to apply for a job there.  Shillingford's removal and alleged termination gave rise to this lawsuit.

During the time Shillingford worked at the refinery, she "believed, acted and portrayed to others and the world that [she] was a HOVIC/Amerada Hess employee and Travel Office manager."  Id. at 3.  Evidence from both Shillingford and from HOVIC and Hess shows that HOVIC provided her with an office and with the materials, equipment, and supplies necessary to coordinate their travel services.  Colabella Corporate Dep. at 13, 23; Shillingford Aff. at 3.  Shillingford also received training from Hess employees Norma Rhorbach and Josephine Trotter.  Shillingford Aff. at 2; Trotter Dep. at 26.  Moreover, Shillingford attests that she was supervised by and took her day-to-day directives from HOVIC and Hess employees.  Shillingford Aff. at 2-4.  Hess admits that Shillingford "reported to" and

-4-

"took ... work direction" from Guidry.  Colabella Corporate Dep. at 17.  Guidry was also the person who signed Shillingford's time sheets.  Colabella Dep. at 59-60; Shillingford Aff. at 3.

HOVIC and Hess tell a different story.  They explain that during the time Shillingford worked at the refinery, they had a series of contracts with various travel agencies for the provision of business travel services.  They contend that Shillingford was hired and employed by these contractors, not HOVIC or Hess, and that she was merely assigned to work on-site at HOVIC.  Gay Corporate Dep. at 20-21.  When Shillingford began work at the HOVIC premises in 1989 the company with which HOVIC and Hess contracted for travel services was Industrial Maintenance Corporation ("IMC").  After the expiration of the contracts with other travel agencies, HOVIC contracted in 1994 with American Express in a document titled "Travel Services Agreement."  American Express in turn contracted with Southerland Tours, a St. Croix travel agency, to provide the local services at the HOVIC refinery.  Id.  It is undisputed that Southerland Tours issued Shillingford's paychecks.

HOVIC and Hess insist that they were never Shillingford's employer.  According to Don Gay, Hess' corporate designee under Rule 30(b)(6), the contract between HOVIC and American Express ended during Shillingford's medical leave.  Id. Hess maintains that because of the termination of this contract, she was asked to leave the premises when she returned from medical leave in May, 1998.  Id.

-5-

According to Southerland Tours, it "was not involved in the negotiations between American Express and HOVIC regarding the employment or the provision of payroll services to Pamela Shillingford."  Simpson Aff. at 2.  Mary Simpson, the owner of Southerland Tours, has testified that she never employed, supervised, or evaluated Shillingford.  Simpson Aff. at 2. Rather, she stated that American Express was Shillingford's employer and that Southerland Tours was responsible only for providing payroll services for Shillingford as part of its contract with American Express.  Id. at 2-3.  It paid Shillingford based on time sheets it received signed by HOVIC employees.  Colabella Dep. at 59-60; Shillingford Aff. at 3; Simpson Dep. at 14.

Shillingford declares that when she was terminated in May, 1998 she was replaced by Linda Lane, a white woman with no experience as a travel agent.  Shillingford Aff. at 5.  HOVIC and Hess agree that Linda Lane was not a travel agent, and they insist that she did not perform Shillingford's job.  While they maintain that no one technically "replaced" Shillingford because she was not their employee, they admit that Michelle Hendrickson,[5] a black West Indian woman like Shillingford who was also employed by contracting travel agencies, took over Shillingford's job duties.  Colabella Dep. at 52-53; Hendrickson-Dennis Dep. at 27-28.

---

5.  She is now known as Michelle Hendrickson-Dennis.

-6-

At least as recently as her deposition in 2005, Shillingford continued to suffer from her disabling injuries sustained at the St. Croix airport and remained unable to return to work as a travel agent.  Shillingford Dep. Apr. 29, 2005 at 177.

In Count I of her amended complaint Shillingford alleges employment discrimination based on her race and sex in violation of Title VII of the Civil Rights Act.  She claims that the four defendants "acted in a manner exhibiting discriminatory intent, showed disparate treatment, and created, permitted and/or ratified actions of a hostile nature."  Am. Compl. at 5. Specifically, she asserts that she was wrongfully denied access to her work site and that the defendants replaced her with "a white female with no experience in the travel business."  Id. Shillingford makes analogous allegations in Count IX for violations of 42 U.S.C. § 1981.

Shillingford alleges in Count II that the four defendants engaged in extreme and outrageous conduct that caused her severe emotional distress when they threatened to terminate her from her job during her medical leave, and when they forcibly removed her from the refinery upon her return to work.

In Count III Shillingford maintains that HOVIC and Hess breached an oral agreement to employ her in a permanent managerial position as the "Travel Manager in the HOVIC travel office."  Am. Compl. at 7.  She further alleges that as a condition of leaving her job with American Airlines and accepting

employment as a HOVIC employee, she was promised certain
benefits, privileges, and wages, which were never provided to her
in her nine years of employment at the refinery.

In Count IV Shillingford contends generally that the
defendants violated the "Workers' Compensation Laws of the U.S.
Virgin Islands" when they terminated her because she sought and
obtained workers compensation.

Shillingford labels Count V "Agency," which appears
repetitious of her claims for race discrimination and emotional
distress.

Shillingford alleges in Count VI that HOVIC and Hess
fraudulently induced her to accept employment with them based on
promises of certain compensation and benefits.  Shillingford
makes similar allegations for "misrepresentation" in Count VII.

Finally, in Count VIII Shillingford pleads that HOVIC
violated the Americans with Disabilities Act ("ADA") when it
denied her continued employment in May, 1998 and again when she
re-applied for employment in June, 1998.

Shillingford seeks compensatory and punitive damages,
as well as attorney fees and costs, and prejudgment interest.

II.

Rule 56 of the Federal Rules of Civil Procedure
provides that summary judgment "should be rendered if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine"
if the evidence is such that a reasonable jury could return a
verdict for the non-moving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material"
when it "might affect the outcome of the suit under the governing
law."  Id.  After reviewing the evidence, the court draws all
reasonable inferences in the light most favorable to the non-
moving party.  In re Flat Glass Antitrust Litig., 385 F.3d at
357.  We may consider only evidence that would be admissible at
trial.  Fed. R. Civ. P. 56(e); Philbin v. Trans Union Corp., 101
F.3d 957, 961 n.1 (3d Cir. 1996).

III.

Shillingford has not opposed the pending motion for
summary judgment with respect to:  Count IV for "violation of the
Workers' Compensation laws," Count V for "Agency," Count VIII for
violations of the ADA, and her request for punitive damages.  She
also does not pursue her claim of sex based discrimination
alleged as part of Counts I and IX.  Under these circumstances,
while we may presume that there is no dispute as to the material
facts of these claims, we still must determine whether the
defendants are entitled to summary judgment as a matter of law.
See Fed. R. Civ. P. 56(c);  Anchorage Assocs. v. V.I. Bd. of Tax
Rev., 922 F.2d 168, 175 (3d Cir. 1990).  We have reviewed the
record and conclude that these claims are without merit.
Consequently, we will grant the motion of HOVIC and Hess for
summary judgment with respect to Counts IV, V, and VIII, and with

respect to Counts I and IX to the extent they state a claim for sex discrimination.

IV.

HOVIC and Hess, as noted earlier, strenuously deny employing Shillingford and come forward with evidence that they were never her employers.[6]  Whether or not they were her employer is a crucial fact in determining whether Shillingford can succeed on her claim of racial discrimination in employment against them under Counts I and IX.

Title VII protects certain employees from various forms of discrimination and retaliatory conduct.  It defines "employee" as "an individual employed by an employer."  42 U.S.C. § 2000e(f).  This "nominal definition," as the Supreme Court has called it, "is completely circular and explains nothing." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992). Although the Court in Darden was construing the meaning of "employee" under ERISA, 29 U.S.C. § 1002(6), not Title VII, the definition in the two statutes is verbatim.  Moreover, the Court's holding was not narrowly drawn.  In Darden the Court reiterated the rule from a prior case concerning the Copyright

---

6. For the purposes of this lawsuit, HOVIC and Hess have acted as a single entity.  They share counsel and they state in their reply brief to the instant motion that Shillingford was "an employee of Southerland Tours/AMEX who was assigned to handle the large volume of travel services demanded by a single client – HOVIC and HC [Hess Corporation]."  Defs.' Reply Br. at 10. Therefore, we attribute the acts of each defendant to the other and proceed on the assumption that if the evidence would permit a reasonable jury to conclude one defendant was the employer of Shillingford it could use the same evidence to make the same conclusion as to the other.

-10-

Act of 1976, 17 U.S.C. § 101, that "when Congress has used the
term 'employee' without defining it, we have concluded that
Congress intended to describe the conventional master-servant
relationship as understood by common-law agency doctrine."
Darden, 503 U.S. at 322-23 (quoting Cmty. for Creative Non-
Violence v. Reid, 490 U.S. 730, 739-40 (1989)).  The Supreme
Court added that because "we do not find[] any provision either
giving specific guidance on the term's meaning or suggesting that
construing it to incorporate traditional agency law principles
would thwart the congressional design or lead to absurd
results.... we adopt a common-law test for determining who
qualifies as an 'employee' under ERISA."  Id. at 323.  That test
entails considering

> the hiring party's right to control the
> manner and means by which the product is
> accomplished.  Among the other factors
> relevant to this inquiry are the skill
> required; the source of the instrumentalities
> and tools; the location of the work; the
> duration of the relationship between the
> parties; whether the hiring party has the
> right to assign additional projects to the
> hired party; the extent of the hired party's
> discretion over when and how long to work;
> the method of payment; the hired party's role
> in hiring and paying assistants; whether the
> work is part of the regular business of the
> hiring party; whether the hiring party is in
> business; the provision of employee benefits;
> and the tax treatment of the hired party.

Id. at 323-24 (quoting Reid, 490 U.S. at 751-52).

Our Court of Appeals made explicit in Graves v. Lowery
that it is "the nature of the relationship" rather than any
technical label or formality that determines employer status.

-11-

117 F.3d 723, 728 (3d Cir. 1997).  The level of control asserted by an organization "over an individual's access to employment and the organization's power to deny such access" is central.  Id.

Taking the facts in the light most favorable to Shillingford, it appears that the doctrine of joint employers may be applicable.  Joint employers exist where "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982).  Applying this control test requires careful factual inquiry.  Graves, 117 F.3d at 729. Factors relevant to the court's determination that two or more entities are joint employers include, but are not limited to, whether they shared the right to hire and fire, supervise, establish work hours, determine compensation, and devise rules. See Browning-Ferris, 691 F.2d at 1124-25.  A finding of control over hiring and firing, alone, is sufficient for a jury to conclude that an entity is a joint employer.  Mendez v. HOVENSA, L.L.C., No. 02-169, 2008 WL 803115, at *5 (D.V.I. Mar. 24, 2008). Finally, "[a]lthough employee expectations are not dispositive of employer status, they are relevant."  Graves, 117 F.3d at 728-29.

HOVIC and Hess argue that they never conducted performance evaluations of Shillingford's work, never paid her, never paid payroll or social security taxes for her, never paid

for her Workers Compensation insurance, and never owned or provided the specialized ticketing equipment she required for her job.  In response, Shillingford offers evidence that:  she worked exclusively at the HOVIC refinery; HOVIC provided her with an office there, as well as furniture, equipment, and supplies; she received her work direction and day-to-day supervision from Guidry, a HOVIC employee who supervised her and signed her time sheets; and she was permitted to partake of certain benefits generally reserved to HOVIC employees such as getting water from the refinery and using the free HOVIC bus to transport her children after school.  Based on the present record we conclude that there is a genuine dispute as to whether HOVIC and Hess, together with others, were Shillingford's joint employers.  See Darden, 503 U.S. 323-24; Graves, 117 F.3d at 727-29; Dowling v. HOVIC, No. 98-127, 2008 U.S. Dist. Lexis 72098, at *1 (D.V.I. Sept. 22, 2008).

V.

Even if HOVIC and Hess were Shillingford's employers, they maintain that she cannot succeed under 42 U.S.C. §§ 2000e et seq. or § 1981 in her race discrimination claims brought against them.  Section 2000e makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Section 1981 protects individuals' rights "to make and enforce

contracts, to sue, be parties, give evidence, and to the full and
equal benefit of all laws and proceedings for the security of
persons and property." 42 U.S.C. §§ 2000e-2, 1981. Both
sections require the application of the familiar McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973) burden-
shifting framework. See Tex. Dep't of Cmty. Affairs v. Burdine,
450 U.S. 248, 252-53 (1981); Jones v. Sch. Dist. of Phila., 198
F.3d 403, 410 (3d Cir. 1999). Under that framework,

> First, the plaintiff has the burden of
> proving by the preponderance of the evidence
> a prima facie case of discrimination.
> Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to
> the defendant "to articulate some legitimate,
> nondiscriminatory reason for the employee's
> rejection." [McDonnell Douglas, 411 U.S.] at
> 802, 93 S. Ct., at 1824. Third, should the
> defendant carry this burden, the plaintiff
> must then have an opportunity to prove by a
> preponderance of the evidence that the
> legitimate reasons offered by the defendant
> were not its true reasons, but were a pretext
> for discrimination.

Burdine, 450 U.S. at 252-53. To establish a prima facie case
Shillingford must show that (1) she is a member of a protected
class; (2) she was qualified for the position; (3) she suffered
an adverse employment action; and (4) similarly situated
nonmembers of her protected class were treated more favorably.
Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d
Cir. 2000); Harley v. Caneel Bay, Inc., 193 F. Supp. 2d 833, 835
(D.V.I. 2002) (collecting cases).

Rule 56(e) provides that an affidavit supporting or
opposing a motion for summary judgment "must be made on personal

-14-

knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). To defeat summary judgment, the plaintiff must come forward with "significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 256. In order to produce sufficient evidence to establish a prima facie case of race discrimination, a plaintiff's conclusory allegations, even if stated in an affidavit, are inadequate. Johnson v. Diamond State Port Corp., No. 99-153-GMS, 2001 WL 873229, at *3 (D. Del. Aug. 2, 2001), aff'd 50 Fed. Appx. 554 (3d Cir. 2002). The burden is on the plaintiff to set forth specific facts based on her personal knowledge and observation. Id.

Shillingford brings two separate race discrimination claims. First, she asserts she was not given salary or benefits comparable to that of her white counterpart, namely Josephine Trotter. Second, she contends that she was fired because she is black and that Linda Lane, a white woman with lesser qualifications, replaced her. She easily satisfies the first prong of the prima facie case. It is undisputed that Shillingford is a black woman of African descent born on the island of Dominica. As such, she is a member of a protected class.

Even assuming that Shillingford meets prongs two and three of the prima facie case, she falters at prong four. With respect to her first claim of race discrimination, Shillingford makes the following statement in her affidavit:

-15-

> [T]here were employees at Amerada Hess
> corporate office in New Jersey who performed
> the same functions as me but were paid
> substantially higher wages, given much better
> benefits and enjoyed the privileges of
> managerial staff that were promised to me but
> never given.... [T]hose Amerada Hess
> employees were white and because I was black,
> living in the West Indies and married to a
> Dominica national they were given higher pay,
> benefits and opportunities.

Shillingford Aff. at 4.  In her brief in opposition to summary
judgment she narrows her focus to Josephine Trotter.  However,
Shillingford has offered no evidence of Trotter's compensation
and thus cannot show that there is a genuine issue of material
fact as to whether Trotter was treated more favorably than she.[7]

     With respect to her second claim, Shillingford alleges
that Lane took over Shillingford's responsibilities after
Shillingford's fall at the airport.  Her evidence on this point
consists solely of her own sworn statement that "HOVIC and
Amerada Hess placed a white female as HOVIC Travel Manager to
perform my duties and assume the responsibilities I had but they
paid her more money than me, she received benefits I never got
and had managerial privileges."[8]  Shillingford Aff. at 5.
Because Shillingford did not work at the refinery after her fall

_____

7.  We acknowledge that by Order of November 3, 2008, this court
denied Shillingford's motion to compel HOVIC and Hess to produce
Trotter's personnel file because "[n]owhere in her brief d[id]
Shillingford explain who Josephine Trotter is or why she wants
her file."  Mem. of Nov. 3, 2008.

8.  Shillingford also relies on the affidavit of her husband,
Donald Shillingford.  That affidavit is based exclusively on
statements his wife made to him.  Thus, not only are his
statements based on hearsay, but they add no probative value.

-16-

in July, 1997, any knowledge she might have of what transpired at the work site after that time must necessarily be based on inadmissible hearsay.

In Lane's deposition, when asked if her duties and responsibilities changed when Shillingford no longer worked at the refinery, she testified, "No."  Lane Dep. at 42.  Lane said "To the best of my knowledge, Michelle Hendrickson took over those duties and responsibilities."  Id. at 43.  Likewise, Rocco Colabella, a former HOVIC manager whom the company designated to speak for it, testified that while Shillingford was on medical leave her work was "split up" between Michelle Hendrickson and Linda Lane.  Colabella Dep. at 43-33.  With respect to Lane, he clarified that Shillingford's work was "only a small part of her responsibility.  The majority of [Lane's] responsibility was contract administration, not travel.  She just filled in a very small part of her responsibility for what formerly Pamela was doing.  It wasn't that she took over what Pamela was doing."  Id. at 45.  Michele Hendrickson also testified that she assumed Shillingford's duties when she left, with the exception that Hendrickson could not actually print airline tickets until she received her travel agent certification in 2000.  Hendrickson-Dennis Dep. at 14-18.  Until that happened, no one at HOVIC was printing tickets in Shillingford's absence.  Id. at 25-26.

Shillingford responds in her brief, "Despite the euphemisms used by Ms. Lane, clearly, she was hired to perform most of Ms. Shillingford's duties."  Pl.'s Opp'n Br. at 11.

-17-

Shillingford, however, offers no evidence in support of her conclusions.  She has no personal knowledge of Lane's job duties, and there is nothing in her affidavit to suggest that she is competent to testify about other employees' job descriptions. Shillingford does not respond to the contention that it was Hendrickson who actually replaced her.  Thus, there is no probative evidence to contradict HOVIC and Hess's evidence that Hendrickson, not Lane, replaced Shillingford.  Because Michelle Hendrickson is a black West Indian woman like Shillingford, her assumption of Shillingford's duties cannot serve as a basis for Shillingford's race discrimination claim.

HOVIC and Hess offer as a legitimate non-discriminatory reason for their actions taken against Shillingford that American Express and/or Southerland Tours controlled the terms of her employment and that Hess' contract with American Express came to an end while Shillingford was out on medical leave.  Since Shillingford has failed to establish a prima facie case, we do not need to consider HOVIC and Hess' explanations.

Even if HOVIC and Hess employed Shillingford, she has not shown that they treated a similarly situated employee of another race more favorably than they treated her.  We therefore conclude that Shillingford has failed to establish that there is a genuine dispute of material fact regarding her race discrimination claims.  Accordingly, we will grant the motion of HOVIC and Hess for summary judgment on plaintiff's race discrimination claims in Counts I and IX.

VI.

The remaining claims in Shillingford's amended complaint—intentional infliction of emotional distress, breach of contract, and fraud—arise under Virgin Islands territorial law. As with Shillingford's race discrimination claims, HOVIC and Hess' chief argument in favor of summary judgment on these counts is that they never employed her.  For the reasons discussed above, we conclude that Shillingford has come forward with sufficient evidence to permit a reasonable jury to conclude that she was an employee of HOVIC and Hess.  HOVIC and Hess contend in the alternative that even if she were their employee, Shillingford can offer no admissible evidence to support her contract and tort claims.

In Count II of her amended complaint Shillingford alleges that the defendants caused her severe emotional distress "by telephonically threatening plaintiff with termination from her job during her severe illness and by forcefully escorting plaintiff off her work site when she showed up to work."  Am. Compl. at 6.  Shillingford further argues in her brief that HOVIC and Hess "concocted an elaborate scheme to implement a travel agency at the refinery without having to obtain a license" and that they did so "by entering into a fraudulent arrangement with the travel agenc[ies] of Southerland Tours and American Express, to ostensibly 'hire' Ms. Shillingford."  Pl's Opp'n Br. at 18.

To prevail on a claim for intentional infliction of emotional distress in the Virgin Islands, the conduct must have

-19-

been "so outrageous and so beyond all bounds of decency to be
considered atrocious and utterly intolerable in a civilized
society." Thomas Hyll Funeral Home, Inc. v. Bradford, 233 F.
Supp. 2d 704, 714 (D.V.I. 2002) (internal quotations omitted).
It is well established that "as a preliminary matter, it is for
the court to determine if the defendant's conduct is so extreme
as to permit recovery." Cox v. Keystone Carbon Co., 861 F.2d
390, 395 (3d Cir. 1988).  We do not find that threatening to
terminate plaintiff while she was on a nine month medical leave,
or removing her from the job site when she returned, are such
outrageous acts as to be utterly intolerable in a civilized
society.  Accordingly, we will grant the motion for summary
judgment on her claim for intentional infliction of emotional
distress.

        Next, Shillingford alleges that HOVIC and Hess breached
an oral contract they made with her regarding the terms and
conditions of her employment.  Specifically, she contends that
they "represented to and agreed with plaintiff that, if plaintiff
would leave plaintiff's position with American Airlines" they
would give her "a permanent managerial position as Travel Manager
in the HOVIC travel office" and that she "would be a HOVIC
employee with full benefits."  Am. Compl. at 2 & 7.

        To prove breach of contract in the Virgin Islands, a
plaintiff must show that:  (1) a contract existed, (2) a
contracting party breached a duty imposed by the contract; and
(3) the plaintiff suffered damages as a result of the breach.

-20-

See Stallworth Timber Co. v. Triad Bldg. Supply, 968 F. Supp.
279, 282 (D.V.I. App. Div. 1997).

      Shillingford's evidence that HOVIC and Hess breached an
oral contract with her consists primarily of her own sworn
statements concerning the circumstances of her recruitment and
hiring.  She states that Penny Hensley, a HOVIC employee working
in the human resources division, approached her about the
position at HOVIC while she was working for American Airlines.
Shillingford Aff. at 1.  She further attests that Guidry, the
human resources manager at HOVIC, told her in her interview that
she was being considered for a position at the refinery as the
HOVIC travel office manager.  Id. at 2.  Shillingford maintains
that she left her job with American Airlines based on Guidry's
promises that she would be a HOVIC manager and that she would
enjoy certain benefits, privileges, wages, and allowances, which
she never received.  Id. at 2-3.

      HOVIC and Hess counter that Guidry's statements are all
hearsay and Shillingford cannot rely on them.  However, it is
undisputed that Guidry was the human resources manager at HOVIC.
It therefore appears that he was an agent of HOVIC and qualified
to bind that company.  Thus, Guidry's statements to Shillingford
are admissions by a party opponent under Rule 801(d) of the
Federal Rules of Evidence.  Although the evidence in support of
her breach of contract claim is limited, Shillingford's affidavit
attesting to the existence and details of an oral employment
contract with HOVIC is sufficient to create a genuine issue of

material fact.  Accordingly, we will deny HOVIC and Hess' motion
for summary judgment on Count III for breach of contract.

Counts VI and VII for fraud and misrepresentation are
closely tied to Shillingford's breach of contract claim.  The
elements of common law fraudulent misrepresentation are (1) a
misrepresentation of fact, opinion, intention or law; (2)
knowledge by the maker of the representation that it was false;
(3) ignorance of the falsity by the person to whom it was made;
(4) an intention that the representations should be acted upon;
and (5) detrimental and justifiable reliance.  <u>Financial Trust
Co., Inc. v. Citibank, N.A.</u>, 351 F. Supp. 2d 329, 332 (D.V.I.
2004); Restatement (Second) of Torts § 525 (1977).[9]

While generally a contractual promise of future action
cannot serve as the basis for recovery under a theory of fraud,
it can if the present intention was false at the moment it was
uttered.  <u>See</u> <u>Phoenix Techs., Inc. v. TRW, Inc.</u>, 834 F. Supp.
148, 151-52 (E.D. Pa. 1993) (collecting cases from multiple
jurisdictions); Restatement (Second) of Torts § 525, Comments c &
d.  Thus, assuming Guidry made the promises that Shillingford
alleges, she can recover against HOVIC and Hess if she can prove
that at the time Guidry made the promises, he (as an agent of
HOVIC and Hess) had no intention of fulfilling them.

---

9.  The legislature of the Virgin Islands has provided that
"[t]he rules of the common law, as expressed in the restatements
of the law approved by the American Law Institute ... shall be
the rules of decision in the courts of the Virgin Islands in
cases to which they apply, in the absence of local laws to the
contrary."  1 V.I.C. § 4.

Although Shillingford argues in her brief that HOVIC and Hess engaged in an intentional and elaborate scheme to defraud her, she has offered no admissible evidence that could establish that when the promises were made to her HOVIC and Hess had no intention of granting them.  Her own conclusory affidavit is insufficient evidence of HOVIC and Hess's intent.  <u>See Turnbull v. Thomas</u>, No. 2003-50, 2007 WL 1097867, *4 (D.V.I. Apr. 9, 2007).

Accordingly, we will grant the motion for summary judgment on Counts VI and VII for fraud and misrepresentation. Shillingford may proceed against HOVIC and Hess only on her breach of contract claim.